UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EARL STANLEY COLEMAN, JR.,    :
                              :
        Plaintiff             :    No. 4:10-CV-01842
                              :
    vs.                       :    (Judge Caldwell)
                              :
MICHAEL J. ASTRUE,            :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
        Defendant             :

## MEMORANDUM AND ORDER

### BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Earl Stanley Coleman, Jr.'s claim for social security supplemental security income benefits.  For the reasons set forth below we will affirm the decision of the Commissioner.

This appeal only involves a claim for supplemental security income benefits.  However, Coleman did initially also file an application for disability insurance benefits alleging a disability onset date of January 1, 1993. Tr. 214.129.[1]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being

_____

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on November 18, 2010.

insured is commonly referred to as the "date last insured."  It is undisputed that Coleman met the insured status requirements of the Social Security Act through December 31, 1993. Tr. 116.  In order to establish entitlement to disability insurance benefits Coleman was required to establish that he suffered from a disability on or before that date.  42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Coleman on June 5, 2008, amended his alleged disability onset date to July 25, 2007, which represented a withdrawal of his claim for disability insurance benefits and made him ineligible for disability insurance benefits because the alleged onset date was more than 13 years after the date last insured. Tr. 75 and 116.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Coleman was born in the United States on July 25, 1952. Tr. 222.  Coleman graduated from high school and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 54, 79-81 and 241.

The administrative record reveals that Coleman had limited employment as a painter of residential and commercial buildings. Tr. 82, 242 and 302.  Records of the Social Security Administration reveal that from January 1, 1993, through 2008 Coleman had earnings as follows:

| 1993 | $ | 0.00 |
|------|---|------|
| 1994 | | 0.00 |
| 1995 | | 346.50 |
| 1996 | | 0.00 |
| 1997 | | 0.00 |
| 1998 | | 2332.78 |
| 1999 | | 1470.00 |
| 2000 | | 418.00 |
| 2001 | | 0.00 |
| 2002 | | 0.00 |
| 2003 | | 0.00 |
| 2004 | | 0.00 |
| 2005 | | 2932.50 |
| 2006 | | 270.00 |
| 2007 | | 90.00 |
| 2008 | | 0.00 |

Tr. 233.  Coleman's total earnings for this period were $7859.78. Id.  According to the vocational expert who testified on June 5, 2008, at the first administrative hearing in this case,[2] Coleman had no past relevant employment[3] that amounted to substantial gainful activity.[4] Tr. 102.

---

2.  As will be explained *infra* there were two administrative hearings held in this case.

3.  Past relevant employment in the present case means work performed by Coleman during the 15 years prior to the date his claim for disability benefits was adjudicated by the Commissioner.  20 C.F.R. §§ 416.960 and 416.965.

4.  Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is
(continued...)

Coleman has a history of drug abuse and he spent thirteen years in prison for drug-related activity. Tr. 302.  His drug of choice was heroin and he used that drug as recently as February, 2004. Tr. 301.[5]  One medical record from January 10, 2005, states that Coleman "is a recovering heroin addict and is on a methadone program.  He is not currently drinking alcoholic beverages.  He is on no current medications." Tr. 311.  Coleman also has a history of smoking 1 ½ packs per day for 20 years. Tr. 302.

On March 19, 2007, Coleman protectively filed[6] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 112, 123 and 214-225.  Coleman claims that he became disabled on July 25, 2007, because of back pain and the residuals of rectal cancer. Tr. 23.

---

4.  (...continued)
done (or intended) for pay or profit."  20 C.F.R. § 416.910.  In order to amount to substantial gainful activity the individual's earnings have to rise to at least a minimum level set by the Social Security Administration.

5.  Coleman told an emergency room physician in August, 2006, that he had not used heroin since 1999. Tr. 306.  However, at an appointment with Ronald R. Alexander, M.D., an oncologist, on April 9, 2004, he told Dr. Alexander that he had "used heroin as recently as two months ago." Tr. 301.

6.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

On July 13, 2007, the Bureau of Disability Determination[7] denied Coleman's applications. Tr. 136-143.  On September 13, 2007, Coleman requested a hearing before an administrative law judge. Tr. 144-145.  After about 9 months had passed, a hearing before an administrative law judge was held on June 5, 2008.  Tr. 73-111. On June 24, 2008, the administrative law judge issued a decision denying Coleman's application for supplemental security income benefits and a separate order dismissing Coleman's claim for disability insurance benefits. Tr. 116 and 123-128.  As stated earlier in this memorandum, the claim for disability insurance benefits was dismissed because Coleman amended his alleged disability onset date to a date well-after the date last insured. On July 8, 2008, Coleman requested that the Appeals Council review the administrative law judge's decision denying him supplemental security income benefits. Tr. 169-173.  On September 12, 2008, the Appeals Council granted Coleman's request for review and remanded the case to the administrative law judge for further proceedings. Tr. 133-135.[8]  On January 7, 2009, a second hearing was held

_____

7.  The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 136 and 140.

8.  The administrative law judge found that Coleman did not have a severe impairment and denied benefits at step two of the sequential evaluation process.  The sequential evaluation process will be explained subsequently in this memorandum.  The Appeals
(continued...)

before the same administrative law judge. Tr. 20-72.  At the
second hearing, H. Christopher Alexander, III, M.D., a medical
expert, as well as Coleman and a vocational expert, testified. Tr.
20.  On January 26, 2009, the administrative law judge issued a
decision denying Coleman's application for supplemental security
income benefits. Tr. 13-19.  On March 6, 2009, Coleman requested
that the Appeals Council review the administrative law judge's
decision denying him supplemental security income benefits. Tr. 6-
9.  After 16 months had passed, the Appeals Council on July 26,
2010, concluded that there was no basis upon which to grant
Coleman's request for review. Tr. 1-5.  Thus, the administrative
law judge's decision stood as the final decision of the
Commissioner.

On September 1, 2010, Coleman filed a complaint in this
court requesting that we reverse the decision of the Commissioner
denying him supplemental security income benefits.  The
Commissioner filed an answer to the complaint and a copy of the
administrative record on November 18, 2010. Coleman filed his
brief on December 30, 2010, and the Commissioner filed his brief

---

8.  (...continued)
Council concluded that Coleman had established a severe
impairment, i.e., "most recent objective evidence shows
limitations that would more than minimally affect the claimant's
ability to do basic work activities."  Tr. 134.

on February 1, 2011.  The appeal[9] became ripe for disposition on
February 18, 2011, when Coleman elected not to file a reply brief.

**STANDARD OF REVIEW**

When considering a social security appeal, we have
plenary review of all legal issues decided by the Commissioner.
See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d
Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin.,  181
F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d
857, 858 (3d Cir. 1995).  However, our review of the
Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is
to determine whether those findings are supported by "substantial
evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.
1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).
Factual findings which are supported by substantial evidence must
be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34,
38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported
by substantial evidence, we are bound by those findings, even if
we would have decided the factual inquiry differently."); Cotter
v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by
the Secretary must be accepted as conclusive by a reviewing court

---

9.  Under the Local Rules of Court "[a] civil action brought to
review a decision of the Social Security Administration denying a
claim for social security disability benefits" is "adjudicated as
an appeal."  M.D.Pa. Local Rule 83.40.1.

if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001);  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d 198, 200 (3d Cir. 2008);  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. <u>Brown</u>, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial

evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual

9

lives or in several regions of the country.
42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  <u>See</u> 20 C.F.R. § 416.920; <u>Poulos</u>, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an impairment or combination of impairments that meets or

_____

10.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

11.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920©. If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. <u>Id.</u>  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b).  An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945©.

equals the requirements of a listed impairment,[12] (4) has the
residual functional capacity to return to his or her past work and
(5) if not, whether he or she can perform other work in the
national economy. Id.  As part of step four the administrative law
judge must determine the claimant's residual functional capacity.
Id.[13]

Residual functional capacity is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis.  See Social
Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A
regular and continuing basis contemplates full-time employment and
is defined as eight hours a day, five days per week or other
similar schedule. The residual functional capacity assessment must
include a discussion of the individual's abilities.  Id; 20 C.F.R.
§ 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional
capacity' is defined as that which an individual is still able to
do despite the limitations caused by his or her impairment(s).").

_____

12.  If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
claimant is disabled. If the claimant does not have an impairment
or combination of impairments that meets or equals a listed
impairment, the sequential evaluation process proceeds to the
next step.

13.  If the claimant has the residual functional capacity to do
his or her past relevant work, the claimant is not disabled.

11

**DISCUSSION**

        The administrative law judge at step one of the
sequential evaluation process found that Coleman had not engaged
in substantial gainful work activity since March 19, 2007, the
date the application for benefits was filed. Tr. 15.

        At step two of the sequential evaluation process, the
administrative law judge found that Coleman had the severe
impairment of back pain. Tr. 15.  In so finding the administrative
law judge stated as follows; "The medical expert, Dr. Haddon
Alexander, who is board certified in rheumatology and internal
medicine, testified after reviewing the medical records that back
pain was the only impairment established in the record. He
testified that the claimant had single cell carcinoma of the anal
canal in 2004, but there are no residuals." Tr. 15.

        At step three of the sequential evaluation process the
administrative law judge found that Coleman's impairments did not
individually or in combination meet or equal a listed impairment.
Tr. 16.

        At step four of the sequential evaluation process the
administrative law judge found that Coleman had no past relevant
employment. Tr. 18. The administrative law judge further found
that Coleman had the residual functional capacity to perform a
limited range of medium work. Tr. 16.  Specifically, the

administrative law judge found that Coleman could perform medium work to the extent that

> he can occasionally use foot/leg controls with the bilateral (sic)[14] left lower extremity, climb stairs, stoop, kneel, crouch and reach overhead with the bilateral upper extremities.  He can never climb ropes, ladders, scaffolding or poles or crawl. He can have occasional exposure to extreme outside weather.  He can never have his left lower extremity exposed to vibrating objects or surfaces, work in high exposed places or work around fast moving machinery on the ground.

Tr. 16.  In finding that Coleman could perform a limited range of medium work, the administrative law judge relied primarily on the testimony of Dr. Alexander and rejected the opinions of Stuart A. Hartman, D.O., a physician who treated Coleman on approximately seven occasions from July 28, 2007, to February 3, 2009, and Brian F. D'Eramo, D.O., a physician who examined Coleman on behalf of the Bureau of Disability Determination. Tr. 336-339 and 356-400. Both Dr. Hartman and Dr. D'Eramo provided functional assessments that limited Coleman to less than a limited range of medium work. The administrative law judge explained his rejection of the opinions of those two physicians as follows:

> The claimant alleges disability due to back problems and cancer. He reports chronic pain. The claimant testified as follows: Since the last hearing, he had

---

14.  The insertion of the word "bilateral" is a typographical error because when questioning the vocational expert the administrative law judge only stated "foot and leg pedals or levers with the left lower extremity is limited to occasionally." Tr. 57.

his gallbladder removed, but has recovered.  He cannot
lift 50 pounds.  His back, buttocks and legs are
not getting any better. He is taking methadone
and his dose has increased since the last hearing.
*    *    *    *    *    *    *    *    *    *    *

In terms of the claimant's alleged back pain, the
claimant is generally credible but not to the extent
of the limitations alleged. His allegations are not
supported by the signs, findings and observable
phenomena.  The degree of treatment is inconsistent
with his complaints.  Since the amended onset date,
he has not had hospitalizations, physical therapy,
chiropractic treatments or TENS unit.  There is no
indication that he needs surgery.

As stated by Dr. Alexander, there is no imaging
which provides a basis for his pain complaints. . .
The doctor noted that Dr. D'Eramo indicated that the
claimant could stand and walk 5 hours and then have
a rest period.  However, Dr. Alexander believes he
could stand and walk 6 hours.  Dr. Alexander noted
that at the examination with Dr. Hartman on December
2, 2008, the claimant had an antalgic gait on the left.
However, Dr. Hartman does not state there is atrophy.
Dr. Alexander does not know how to interpret that
strength was 75% good, which was then described as
abnormal because minimal weakness is not significant.
Muscle testing of the other leg was 5/5.  At this
exam, the claimant also had numbness on the outside
of the leg, which was not corroborated by the
consultative evaluation, who found muscle strength
at 5/5 and reflexes at 2+.  He also had muscle
tightness.

As for the opinion evidence, Dr. Alexander testified
that the opinion of Dr. Hartman in April 2008 for
light work is too restrictive and not consistent with
the other records (Exhibit 9F).  The opinion of Dr.
D'Eramo was also too restrictive in part, as he does
not understand the restriction for pushing and pulling
with the upper extremities or with the limitation for
temperature extremes.

*    *    *    *    *    *    *    *    *    *    *

14

> The undersigned notes that the claimant had back
> surgery in 1993 and had no treatment for over 10
> years.  There is no imaging to support a worsening
> of his condition since that time.  Despite the
> finding of Dr. Hartman, the doctor stated that he
> could shop, travel with a companion, ambulate
> without a wheelchair, walker, canes or crutches,
> walk a block at a reasonable pace on rough or
> uneven surfaces, use public transportation, climb
> a few steps, prepare a meal, care for personal
> hygiene and sort, handle and use paper/files. Although
> the claimant has a limp, he does not need a cane to
> ambulate.
>
> The claimant does not have a good work history even
> prior to the back surgery.  He always lived off his
> girlfriend which makes it questionable as to whether
> he really has a motivation to work. On his function
> report, he stated that he could do cleaning and
> laundry and shop at the grocery store.

Tr.17-18.  Dr. Alexander testified that Coleman could lift and
carry and push and pull fifty pounds occasionally and twenty-five
pounds frequently, sit for six hours in an eight hour workday and
stand and walk for six hours in and eight hour workday.  Tr. 32
and 36-39. Coleman also could balance, climb stairs but not ropes,
ladders, scaffolding or poles; he could occasionally stoop, kneel,
crouch, squat and crawl but he could not operate rapidly moving
machinery or work at heights. Id.  Dr. Alexander testified that
Coleman had the ability to stand and walk an entire workday with
reasonable breaks and sit for six hours with normal breaks. Tr.

36.  Dr. Alexander's testimony is consistent with the functional requirements of a limited range of medium work.[15]

---

15.  The terms sedentary, light and medium work are defined in the Social Security regulations as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> © *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

20 C.F.R. § 416.967.

At step five, the administrative law judge based on a residual functional capacity of a limited range of medium work as described above and the testimony of a vocational expert found that Coleman had the ability to perform work as a battery stacker, mail clerk and food and beverage order clerk, and that there were a significant number of such jobs in the state and national economies. Tr. 19.

The administrative record in this case is 400 pages in length, primarily consisting of medical and vocational records. Coleman's primary argument is that the administrative law judge erred by failing to accept the opinions of Dr. Hartman and Dr. D'Eramo and by not appropriately assessing Coleman's credibility.[16]  He also argues that the Appeals Council should

_____

16.  Coleman also argues that (1) the administrative law judge did not comply with the Appeals Council's remand order of September 12, 2008, (2) there is a lack of evidence supporting the existence of other jobs that he can perform, (3) the administrative law judge did not evaluate appropriately the testimony of Coleman's girlfriend, and (4) the administrative law judge erred by failing to find that Coleman was disabled under a Medical-Vocational Rule (the "Grids"). These arguments lack merit. The administrative law judge adequately complied with the remand order by calling a medical expert to testify at the second hearing; the testimony of the vocational expert supports the existence of other jobs Coleman can perform; Coleman's girlfriend testified at the first administrative hearing and the testimony was relatively brief and does not add much to the discussion of Coleman's credibility; and the issue of whether Coleman met the requirements of a Medical-Vocational Rule is subsumed within the issue of whether the administrative law judge appropriately rejected the opinions of Dr. Hartman and Dr. D'Eramo.

17

have remanded the case to the administrative law judge based on an MRI of Coleman's lumbar spine conducted in February, 2009, after the administrative law judge issued her decision.  We have thoroughly reviewed the record in this case and find no merit in Coleman's arguments.  The administrative law judge did an adequate job of reviewing Coleman's vocational history and medical records in his decision. Tr. 15-19.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 12, Brief of Defendant.

Because the administrative law judge adequately reviewed the medical evidence in her decision we will only comment on a few items.

The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000).  The Court of Appeals stated in relevant part as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments,

18

speculation or lay opinion.

Id. at 317-18 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d).

The social security regulations specify that the opinion of a treating physician may be accorded controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  Likewise, an administrative law judge is not obliged to accept the testimony of a claimant if it is not supported by the medical evidence.  An impairment, whether physical or mental, must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements.  20 C.F.R. § 404.1508 (2007).  In this case the administrative law judge appropriately considered the contrary medical opinion of Dr. Alexander and the objective medical evidence and concluded that the opinion of Dr. Hartman was not adequately supported by objective medical evidence consisting of signs, symptoms and laboratory findings.  The administrative law judge gave an adequate explanation for rejecting the opinion of Dr. Hartman, the treating physician.

19

As for Dr. D'Eramo the law does not accord the opinions of non-treating, consultative physicians any special preference. The administrative law judge gave an adequate explanation for concluding that Dr. D'Eramo's assessment was too restrictive.

Coleman argues that the administrative law judge inappropriately assessed his credibility. The administrative law judge was not required to accept Coleman's claims of completely debilitating pain. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Coleman when he testified at the hearings on June 5, 2008, and January 7, 2009, the administrative law judge is the one best suited to assess the credibility of Coleman.

20

The administrative law judge appropriately took into account Coleman's limitations in his residual functional capacity assessment. She limited him to a range of medium work. The testimony of Dr. Alexander, the objective medical evidence and Coleman's activities of daily living do not support Coleman's claim of totally debilitating pain. The administrative law judge appropriately evaluated Coleman's credibility.

After the administrative law judge issued her decision, Coleman's attorney submitted further evidence to the Appeals Council. Evidence submitted after the administrative law judge's decision cannot be used to argue that the administrative law judge's decision is not supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 594-595 (3d Cir. 2001). The only purpose for which such evidence can be considered is to determine whether it provides a basis for remand under sentence 6 of section 405(g), 42 U.S.C. Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence 6 of section 405(g) the evidence must be "new" and "material" and a claimant must show "good cause" for not having incorporated the evidence into the administrative record. Id.

The evidence submitted by Coleman to the Appeals Council was an MRI of his lumbar spine conducted on February 10, 2009. Tr. 394. This evidence is not new and material and Coleman has

21

not established "good cause" for failing to submit the evidence in a timely fashion.  No explanation is given as to why Dr. Hartman, his treating physician, did not order an MRI in April, 2008, when Dr. Hartman opined that Coleman was functionally limited because of back pain. Tr. 374-380. We are not convinced that the evidence is material. The MRI does not show spinal or nerve root compression, both sources of possible pain. Although the MRI does show degenerative disc disease a possible source of pain,  the administrative law judge found that Coleman's back pain was a severe impairment which limited him to less than the full range of medium work. Finally, Coleman has the option to file a new application for supplemental security income benefits based on this alleged new evidence.[17]

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

---

17.  Supplemental security income is a needs based program and eligibility for this benefits is not limited based on an applicant's date last insured.

An appropriate order will be entered.


/s/ William W. Caldwell
WILLIAM W. CALDWELL
United States District Judge


Dated: September 2, 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EARL STANLEY COLEMAN, JR.,         :
                                   :
         Plaintiff                 :      No. 4:10-CV-01842
                                   :
     vs.                           :      (Judge Caldwell)
                                   :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
                                   :
         Defendant                 :

ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1.   The Clerk of Court shall enter judgment in favor of the Commissioner and against Earl Stanley Coleman, Jr., as set forth in the following paragraph.

2.   The decision of the Commissioner of Social Security denying Earl Stanley Coleman, Jr., supplemental security income benefits is affirmed.

3.   The Clerk of Court shall close this case.


                         /s/ William W. Caldwell
                         WILLIAM W. CALDWELL
                         United States District Judge

Dated: September 2, 2011

24